## No. 7093.

STATE EX REL. ZUNTZ & SPORL VS. THE JUDGE OF THE FIFTH DISTRICT
COURT ET AL.

The appellee has the right to require that the sureties on an appeal bond, who have
signed the bond *jointly*, shall all reside within the jurisdiction of the court whose
judgment has been appealed from, when the respective sum for which each
surety has bound himself must be computed, in order to make up the necessary
amount of the bond.

APPLICATION for writs of mandamus and prohibition.

*Richardson & Magruder* for relators.

*Singleton & Browne* and *McGloin & Nixon* for respondents.

The opinion of the court was delivered by

MARR, J.    On motion the suspensive appeal granted in this case was
set aside, on the ground that one of the sureties in the appeal bond
was not legally sufficient, because he resides in the Sixth Municipal
District of the city of New Orleans.

The bond in this case is not solidary but joint, each surety binding

himself for part only of the amount; and the single question is as to the sufficiency of one of them, J. D. Britton, on the ground stated.

In the cases of Remmers, and State vs. Williams, both reported in 29th Annual, we had occasion to review the several acts of the Legislature by which the cities of Jefferson and Carrollton were annexed to the parish of Orleans and became respectively the Sixth and Seventh Municipal Districts of the city of New Orleans. We decided that by the act of 1876, No. 45, p. 86, the Second Judicial District Court, for the Sixth and Seventh Municipal Districts, was vested with unlimited exclusive criminal jurisdiction, and exclusive civil jurisdiction, in cases involving an amount exceeding $100, except in matters of probate; and that the inhabitants of these districts were not amenable to the ordinary civil jurisdiction of the courts of the First Judicial District.

In 1877, the Legislature, by Act No. 85, p. 124, extra session, repealed Act No. 45, of 1876, and annexed the Sixth and Seventh Municipal Districts to the First Judicial District, so as to subject the inhabitants of the entire parish of Orleans to the jurisdiction of the same courts of the city of New Orleans; but this act is not to take effect until the expiration of the term of office of the present judge of the Second Judicial District, which will be after the general election in November, 1880.

The Code of Practice, art. 575, and the act No. 24 of 1876, require, in plain terms, that the surety in an appeal bond shall be a person "residing within the jurisdiction of the court," that is, the court in which the judgment was rendered.

Counsel for relators maintain that, as the bond in this case is joint and not solidary, all the sureties, according to the Code of Practice, art. 165, No. 6, might be sued in the same court, and they cite a number of cases to the effect that, by contracting a joint obligation, the obligors waive the privilege of domicile.

One of these cases simply decides that where two persons sign a note which reads, "*I promise to pay*," the obligation is several as well as joint, Bank vs. Sterling, 2 La. 60 ; and three of them decide that all the joint obligors must be made defendants in a suit on the obligation; and that no judgment can be rendered against one or more of them unless all are parties. Mayor vs. Ripley, 5 La. 120; Toby vs. Hart, 8 La. 523; Thompson vs. Chretien, 3 Rob. 26.

In Wallace vs. Glover, 3 R. 411, it was decided that the surety in a bond given for the release of property attached was amenable to the jurisdiction of the court in which the attachment suit was brought, although he resided in another parish; and in Whitehead vs. Woolfolk, 3 An. 42, it was decided that the sureties of the receiver of a partnership were amenable to the jurisdiction of the court by which the receiver was appointed, without respect to their domicile. The court held in both

these cases that the contract was a waiver of the personal privilege of domicile, and made the sureties amenable to the tribunal in which the main action was pending.

All of these decisions were anterior to the act of 1861, amending art. 162 of the Code of Practice, which forbids the election of a domicile or residence for the purpose of being sued; and it may be questioned whether a person could, validly, agree in advance, at the time of signing a judicial bond, to submit to the jurisdiction of a court to which he was not otherwise amenable, merely for the purpose of qualifying himself as surety.

The decisions just referred to, which relate to suits against joint obligors, and many others might be cited to the same effect, are based upon art. 2080, of the Civil Code—2085 of the Revised Civil Code—which provides that, "In every suit on a joint contract, all the obligors must be made defendants." Of course, if they resided in different parishes, they could be cited to answer in the parish, the domicile of one of them, in which the plaintiff might choose to bring his suit; and the Revised Code of Practice, art. 165, No. 6, did but formulate this necessary rule, by providing that, "when the defendants are joint obligors, they may be cited at the domicile of any one of them."

It may be that, under the dominion of this rule, one of the sureties in an appeal bond, in which each of them bound himself for part of the amount only, could not have pleaded his domicile successfully; but act No. 103 of 1870, published in the acts of 1871, page 18, enacts, section 2, "that hereafter, in all suits against joint obligors, it shall be unnecessary to make all the joint obligors parties to the suit; but each of the joint obligors may be sued and a judgment obtained against them separately for the proportion of the debt or obligation due by them respectively, whether all are joined in the suit or not."

It logically follows that the argument *ex necessitate* has lost its force; and that joint obligors can no longer be compelled on that ground alone, but only in virtue of positive law, to answer before a tribunal to the jurisdiction of which they are not amenable, generally, by reason of their domicile.

The decisions relied upon are wholly inapplicable. If it were true that a surety in an appeal bond, not solidary but joint only, could be compelled, notwithstanding the act No. 103 of 1870, without regard to his domicile, to answer before the tribunal in which the original suit was brought, it would not thence follow that the appellee would be bound to accept him as surety. It is the right of the appellee to demand and to insist that the security upon which his right to enforce his judgment is suspended shall be in strict conformity to law. He may, if he chooses, accept without objection, a surety residing in a distant parish, or whose-

State ex rel. Zuntz & Sporl vs. the Judge of the Fifth District Court.

entire property liable to seizure is in another State; but the law does not compel him to accept any other than "good and solvent security, residing within the jurisdiction of the court, and having property liable to seizure, to the amount of the obligation, within the State." Act of 1876, page 49, 50.

If the mere fact of signing a judicial bond invests the surety with the quality of "residing within the jurisdiction of the court," this requirement of the law is without meaning or effect. It might be proper to hold that the person who has signed a judicial bond as surety should be concluded, and not permitted to set up the plea of domicile in a proceeding to enforce the bond; but a judicial tribunal has no more power to accept as surety in an appeal bond a person not residing within the jurisdiction of the court, than it would have to accept as such surety a person not having within the State property liable to seizure to the amount of the obligation.

The amount for which the three unquestioned sureties bound themselves in this case does not exceed by one half the amount of the judgment, including principal and interest due up to the date at which it was rendered. The other surety, Britton, lacked the qualification of residing within the jurisdiction of the court, as required by law; and the district court had not, nor have we, the power to relieve the relators of the consequences of this fatal objection.

The writs of mandamus and prohibition prayed for are refused; and this proceeding is dismissed at the cost of relators.